Todd NOAH and Noah's
Art, Inc., Plaintiffs,

v.

ENESCO CORPORATION, Defendant.

No. 94 C 3709.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 11, 1995.

Donald G. Weiland, Chicago, IL, for plaintiffs.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on Defendant Enesco Corporation's ("Enesco") motions for summary judgment on Counts I and II of Plaintiff Todd Noah's et al. ("Noah") complaint. Noah filed cross-motions for summary judgment as to all counts. In Counts I and II of his complaint, Noah sues Enesco for fraud and misappropriation of a trade secret under the Illinois Trade Secrets Act.[1] For the reasons stated below, the Court grants Enesco's motion for summary judgment on the fraud count, grants Enesco's motion on the misappropriation count and denies Noah's motion for summary judgment as to all counts.[2]

### BACKGROUND

Plaintiff Noah is an artist who created several hand-made figurines called "New Beginnings", based upon his interpretation of the Biblical Noah's Ark story. Unlike the more common depictions of the story, Noah depicted the animals interacting with each other while leaving the ark, ready to make their new beginning after the flood.

Noah established Noah's Ark, Inc. to market his figurines. Realizing his lack of sophistication and experience in this area, Noah solicited the input and advice of several friends and industry insiders. In addition, Noah alleges that the Precious Moments visitor's center assured him that Precious Moments was not contemplating the production of figurines such as his, and ultimately referred Noah to Defendant Enesco.[3]

In December of 1991, Noah contacted Enesco, the country's largest marketer of giftware, in an attempt to negotiate a licensing agreement. During that meeting, the parties signed a non-disclosure agreement in which Enesco agreed in pertinent part:

> [T]o prevent disclosure of any artwork product ideas, concepts, data, packaging, and/or samples of products submitted by you [Noah; provided that such] ... ideas ... which are previously known to us, possibly even in the process of development by Enesco, or which are in the public domain are not subject to this Agreement.

Soon thereafter, Enesco sent Noah a draft license. In January of 1992, Noah sent Enesco more detailed figurines. Enesco then shipped his figurines overseas for development of preproduction samples and costing. Pursuant to a written agreement, the parties understood that the decision to license and produce the figurines was at Enesco's sole discretion.

After the samples were made, Enesco, at Noah's urging, displayed the figurines at its fall 1993 Pre–Show trade show. Enesco's Precious Moments line also introduced its new interpretation of the Noah's Ark story in its "Two by Two" collection at the same 1993 show. The Precious Moments' figurines resembled Noah's "concept", in that they both depicted the animals as an interacting pair,

---

1. Plaintiff also brings claims for injunctive relief and unjust enrichment. As these claims are the subject of another motion filed contemporaneously by Defendant, the Court reserves its discussion of these issues to the relevant opinion.

2. For purposes of clarity, the Court will address all of the parties arguments as the pertain to each Count of Noah's complaint.

3. Precious Moments refers to a popular religious-theme line of figurines marketed by Enesco.

as opposed to individually. Noah contends that the certain characteristics of the Precious Moment's figurines resemble features of his figurines, such as the intertwined giraffe necks.

Plaintiff Noah's figurines received only minimal customer orders at the trade show, and Enesco advised Noah that it would not pursue a license. Noah alleges that Enesco incorporated his unique concept into their lines, made a large profit from these figurines, and effectively closed him out of the market. As such, Noah filed a four count complaint against Enesco alleging both fraud and the misappropriation of a trade secret. Both parties have filed motions for summary judgment on these counts.

## LEGAL STANDARD

Summary judgment is available only under limited circumstances. Summary judgment is appropriate if the pleadings, affidavits and other material show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists, and summary judgment is therefore inappropriate, if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" exists only if there is a factual dispute that is outcome determinative under governing law. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987). The inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so onesided that one party must prevail as a matter of law. *Anderson* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

The party seeking summary judgment has the initial burden of showing that no such

issue of material fact exists. *Id.* Moreover, the opposing party is entitled to the benefit of all favorable inferences that reasonably can be drawn from the underlying facts, but not every conceivable inference. *DeValk Lincoln Mercury v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

## DISCUSSION

### I. COUNT I: FRAUD

In its motion for summary judgment, the parties apparently agree that the crux of Plaintiff's fraud argument rests upon Noah's contention that Enesco had a duty to disclose that it would and could incorporate Noah's concept for Enesco's own use.[4] Defendant goes to great lengths, quite literally,[5] to demonstrate the absence of such a relationship. In addition, Enesco argues that Noah has presented no evidence that Enesco intended to use Noah's concept when the alleged representation was made and that Noah suffered no damages because his concept was free for use by everyone by the time Enesco first manufactured and sold its "Two by Two" figurines. In response, Noah claims that a special relationship existed between the parties giving rise to a duty to disclose.

■ In general, fraud includes "any act, omission or concealment calculated to deceive, including silence, if accompanied by deceptive conduct or suppression of material facts constituting an act of concealment." *Rybak v. Provenzale*, 181 Ill.App.3d 884, 130 Ill.Dec. 852, 858, 537 N.E.2d 1321, 1327 (1989). Courts should never presume the existence of fraud. *Carey Electric Contracting, Inc. v. First National Bank of Elgin*, 74 Ill.App.3d 233, 30 Ill.Dec. 104, 107, 392 N.E.2d 759, 762 (1979). Under Illinois law, a plaintiff must establish five elements to sup-

---

4. Even the alleged misrepresentation is unclear. While at some points Noah seems to be arguing that Enesco had a duty to disclose that they were considering a similar concept in its Precious Moments line, he later states that Enesco had a duty to disclose that they could assimilate this concept as their own. Enesco, however, disputes Noah's characterization of the events.

5. In an apparent effort to circumvent the page limitation imposed by this District, Defendant has concurrently filed two separate motions for

summary judgment and one motion for judgment on the pleadings. Still dissatisfied with what Defendant must view as a superfluous restriction on the brilliance of its arguments, Defendant unnecessarily single spaced several sections of its briefs, footnoted and quoted at great length, and yet still managed to exceed the 15 page limitation on one of its briefs. In the future, Defendant is strongly cautioned to approach this Court and seek permission to file an extended brief.

port its claim for fraud: 1) a false statement of material fact; 2) by one who believes it to be false; 3) made with the intent to induce action by another in reliance on the statement; 4) action by the other in reliance upon the statement; and 5) injury arising from that reliance. *Soules v. General Motors Corp.*, 79 Ill.2d 282, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980).

To establish fraud by omission, however, Noah need only show: 1) concealment of a material fact; 2) with the intent to deceive; and 3) that he was unaware of the concealed fact and would have acted differently had he known it. *Frain v. Andy Frain, Inc.*, 660 F.Supp. 97, 99 (N.D.Ill.1987). The defendant's failure to disclose the material fact must occur under circumstances which create a duty to speak. *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 778, 630 N.E.2d 940, 943 (1994). A fiduciary or other special relationship creates a duty to speak. *Id.*

As a matter of law, a fiduciary relationship exists between attorney and client, guardian and ward, and principal and agent. *Carey Electric*, 30 Ill.Dec. at 108, 392 N.E.2d at 763. However, a relationship involving "confidence and trust on one side and dominance and influence on the other" may constitute such a relationship where "[t]he existence of such a fiduciary relationship [is] shown by proof so clear and convincing, so strong, unequivocal and unmistaken that it leads to only one conclusion." *Id.* citing *In re Estate of Nelson*, 132 Ill.App.2d 544, 270 N.E.2d 65 (1971). The Court should consider such factors as the "degree of kinship ... disparity in age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly subservient party entrusts the handling of his business and financial affairs to the other and reposes faith and confidence in him" in determining whether such a relationship exists. *In re Estate of Wernick*, 151 Ill.App.3d 234, 104 Ill.Dec. 486, 493, 502 N.E.2d 1146, 1153 (1986).

Noah has failed to show the existence of a relationship giving rise to Enesco's duty to disclose its intent to market the Precious Moments "Two by Two" line. The parties' relationship is governed by contracts, including the December nondisclosure agreement, which should have alerted Noah to the possibility that Enesco could develop similar concepts. While the Court readily acknowledges that Enesco, as the country's largest giftware manufacturer, held a dominant position in the relationship, Noah has failed to present sufficient evidence to convince this Court that this dominance transformed the "formal, contractual relationship into a confidential or fiduciary relationship." *Carey Electric*, 30 Ill.Dec. at 108, 392 N.E.2d at 763.

Noah asserts that, as an unsophisticated craftsman, he sought and relied upon Enesco's advice in developing his concept. The Court notes, however, that Noah also sought the advice of numerous friends, relatives, business persons and small business organizations concerning the development of his concept. In addition, Noah taped conversations, documented meetings, and obtained legal representation in his negotiations with Enesco. As such, the Court finds that Noah was not so unsophisticated and trusting as to transform this business relationship into a fiduciary relationship.

As a practical matter, the Court notes that finding that such a relationship did in fact exist would distort Enesco's position as a marketer of giftware. Arguably, hundreds of craftsman/artisans approach Enesco with various concepts. Despite Enesco's sophistication and experience in this area, it hardly holds itself out as being in the business of cultivating and educating craftsman seeking to develop their being in the business of cultivating and educating craftsman seeking to develop their concepts. In addition, while the Court finds the timing of Enesco's release of the "Two by Two" line suspicious, this "coincidence" fails to save Noah's claim for fraud. *See, Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).

Neither the law nor this Court sanction the usurpation of another's ideas. Noah, however, has failed to present sufficient evidence to support his fraud claim. Specifically, Noah argues that Enesco had a duty to disclose, but fails to show the existence of a fiduciary

or other special relationship creating such a duty. Therefore, Defendant's motion for summary judgment is Granted, and Plaintiff's cross-motion for summary judgment is Denied.

## II. COUNT II: TRADE SECRET MISAPPROPRIATION

■ To establish the misappropriation of a trade secret under Illinois law, the plaintiff must provide evidence showing that the alleged secret was: "1) secret (that is, not generally known in the industry); 2) misappropriated (that is, stolen from [plaintiffs] rather than developed independently or obtained from a third source); and 3) used in the defendant's business." *Composite Marine Propellers v. Van Der Woude*, 962 F.2d 1263, 1265–66 (7th Cir.1992). The existence of confidential information or a secret is an essential element for such relief. *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199 (7th Cir. 1987). The plaintiff has the burden of proving that its trade secrets are in fact "secret". *Wesley–Jessen, Inc. v. Reynolds et al.*, No. 72 C 1677, 1974 WL 20197 (N.D.Ill. May 23, 1974).

The Illinois Supreme Court defines a trade secret as "a plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide in." *ILG Industries, Inc. v. Scott*, 49 Ill.2d 88, 273 N.E.2d 393, 395 (1971). The Illinois legislature codified this common law rule with the enactment of the Illinois Trade Secrets Act ("Act"). The Act defines a "trade secret" as:

information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use;

**and**

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2. A plaintiff must show both elements in order to establish the existence of a trade secret.

■ Both the common law and the Act emphasize the need for secrecy concerning the information to be protected. The Act "preclude[s] protection for information not generally known to the public but clearly understood in a particular industry." *See* Melvin F. Jaeger, Trade Secrets Law § 3.04 (1988). With these principles in mind, this Court believes that, after drawing all reasonable inferences in Plaintiff's favor, Noah has failed to establish the existence of a trade secret.

In its motion for summary judgment, Enesco claims that Noah has failed to establish either of the elements for proving the existence of a "trade secret" as defined under the Act. Enesco highlights: 1) the notoriety the Noah's Ark theme, *Service Centers of Chicago, Inc. v. Minogue*, 180 Ill.App.3d 447, 129 Ill.Dec. 367, 535 N.E.2d 1132 (1989) ("Simply being the first or only one to use certain information does not in and of itself transform otherwise general knowledge into a trade secret."); 2) similar depictions of the Noah's Ark theme by the Franklin Mint and other giftware marketers, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974) (finding no trade secret where the concept is of general knowledge in the trade); and 3) the fact that Noah publicly disclosed his concept, thus destroying any potentially secret status, *Forest Laboratories, Inc. v. Pillsbury Co.*, 452 F.2d 621, 624 (7th Cir.1971) (stating that the secret status of a trade secret disappears when the owner makes his secret public).

In response, Noah argues merely that he did not destroy the concept's secret status by publicly disclosing his concept. Noah claims that he merely discussed the feasibility of the project with a "handful of advisors".[6] Noah asserts that his consultations with those persons to whom it was necessary to confide in

---

**6.** The Court notes that Defendant has presented evidence, including Plaintiff's own deposition

testimony, which shows that Noah discussed his concept with almost anyone who would listen.

do not convert his concept into general knowledge within the industry. *See Hayden's Sport Center, Inc. v. Johnson,* 109 Ill. App.3d 1140, 65 Ill.Dec. 612, 441 N.E.2d 927 (1982). In addition, Noah contends that the existence of the confidentiality agreement between these parties evidences the measures taken to protect the secrecy of the "New Beginnings" concept. As such, Noah argues that his concept satisfies both elements of the Act's definition of a trade secret.

Even accepting Plaintiff's argument that he only revealed his New Beginnings concept to confidential advisors, Plaintiff overlooks the necessity of establishing that the concept is not "generally known to other persons who can obtain an economic benefit from [it]." The Act requires Plaintiff to establish both that the concept sufficiently secret *and* that he took reasonable steps to protect its confidentiality. Noah offers no argument in response to the evidence presented by Enesco that other giftware marketers depicted the Ark animals interacting with each other as they descended the Ark before he presented his "New Beginnings" concept to Enesco. This evidence negates Noah's contention that his concept was new and not generally known to those in the industry. As such, this Court concludes that Noah's concept was not a trade secret as defined by the Act, obviating the need to discuss the remaining two elements of a misappropriation claim. Therefore, Defendant's motion for summary judgment is Granted and Plaintiff's cross motion for summary judgment is Denied.

## CONCLUSION

For the reasons stated above, the Court grants Enesco's motions for summary judgment on Counts I and II of Noah's complaint. The Court denies Noah's motion for summary judgment as to Counts I and II of his complaint.