[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In 1991, the plaintiff, UOP, a New York general partnership, decided to develop a Computer Assisted Schedule A[1] (CASA) System and a Computer Enhanced Cost Estimating[2] (CECE) System. After soliciting bids from several vendors, UOP eventually chose Andersen Consulting, LLP, an Illinois limited liability partnership, formerly known as Andersen Consulting, a general partnership (Andersen). hereinafter referred to as the defendant, as the systems integrator for the CASA and CECE systems.
The plaintiff became dissatisfied with the defendant's work and filed a seven count complaint on May 26, 1995. The complaint alleges the following claims: (count one) breach of contract; (count two) breach of express and implied warranty; (count three) CT Page 4749 negligent misrepresentation; (count four) fraud and deceit; (count five) violations of the Illinois Fraud and Deceptive Business Practices Act; (count six) negligence and gross negligence; and (count seven) attorney's fees.
The defendant has filed a motion (#117) to strike counts two through seven of the complaint, and to strike the entire complaint as to the defendant Andersen Consulting, the general partnership. "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 152. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996).
As to the choice of law issue, the systems integration agreement provides that it is to be interpreted under the laws of the State of Illinois. "[P]arties to a contract generally are allowed to select the law that will govern their contract, unless either: `(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflict of Laws (1971)], would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Elgar v. Elgar, 238 Conn. 839, 850, 679 A.2d 937
(1996). Since neither party has contested the choice of laws provision, the court will interpret the systems integration agreement according to Illinois law.
Count Two: Breach of Express Warranty
The defendant moves to strike the second count of the plaintiff's complaint on the ground that it does not state a cause of action for breach of warranty. The defendant argues that CT Page 4750 the plaintiff has failed to specify in the complaint under which express and implied warranties it is suing. Furthermore, the defendant claims that the alleged express warranties represent mere sales puffery and opinion. The plaintiff relies on the specificity of its complaint and disputes the defendant's characterization of the alleged express warranties.
The defendant's claim that the second count of the plaintiff's complaint lacks specificity is without merit. Increased specificity is obtained through the use of a request to revise, not a motion to strike. See Practice Book § 147(1). Furthermore, the defendant's contention that its alleged express warranties represent mere sales puffery and opinion raises issues also concerning count four. The determination as to whether a statement is puffery is generally a question of fact; Redmac,Inc. v. Computerland of Peoria, 140 Ill. App.3d 741,489 N.E.2d 380, 382 (1986); and "[t]he court must construe the facts in the complaint most favorably to the plaintiff" in a motion to strike. (Internal quotation marks omitted.) Waters v. Autuori, supra,236 Conn. 825. Therefore, the defendant's motion to strike the express warranty claim in count two of the plaintiff's complaint is denied.
Count Two: Breach of Implied Warranty
The defendant also asserts that under Illinois law warranties are not implied in service contracts. The plaintiff did not address this aspect of the motion to strike in its memorandum of law.
"`A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated. . . .'" Eldelwich v. 33 Sumner Associates, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 527767 (May 19, 1994, Hennessey, J., 9 CSCR 620), quoting Donovan v. Davis, 85 Conn. 394, 397, 82 A. 1025 (1912). Count two of the complaint does not contain separate allegations of breach of implied warranty and breach of express warranty. Both of these claims are asserted in each paragraph of count two.
Furthermore, "[i]f any part of a count states a legally sufficient cause of action, then that count is not subject to a motion to strike." Hlavaceck v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 324201 (March 6, 1996, Ballen, J.). Therefore, due to the CT Page 4751 previous finding that the claim for breach of express warranties is legally sufficient, the defendant's motion to strike count two of the plaintiff's complaint is denied.
Count Three: Negligent Misrepresentation
The defendant seeks to strike the third count of the plaintiff's complaint in which the plaintiff alleges negligent misrepresentation. The defendant argues that the plaintiff has not pleaded a claim legally sufficient to overcome the bar against recovering for purely economic losses in tort claims. The plaintiff contends that it fits within the exception to the bar against economic loss recovery in tort.
"[P]urely economic losses are generally not recoverable in tort actions." In re Illinois Bell Switching Station, 161 Ill.2d 233,641 N.E.2d 440, 443 (1994). However, there is an exception to this rule for negligent misrepresentation where "two elements are present: First, the defendant must be in the business of supplying information, and second, the defendant must provide this information for the guidance of others in their business relations with third parties." Gerdes v. John Hancock Mutual LifeIns. Co., 712 F. Sup. 692, 696 (N.D.Ill. 1989).
For the first element, "the inquiry is whether the information provided was an important part of the product offered. . . . If the information furnished along with the noninformational goods or services was central to the business transaction, the individual providing this information is deemed to be in the business of supplying information. . . ." Gerdes v.John Hancock Mutual Life Ins. Co., supra, 712 F. Sup. 696. To satisfy the second element, "a plaintiff asserting a claim for negligent misrepresentation also must allege facts showing that he used the information to guide him in a business transaction with a third party — that is, a party other than the defendant." Id., 698.
The plaintiff's complaint only shows that the defendant was in the business of creating a product that would allow the plaintiff to organize its internal data for the use of its customers. Any information exchanged was used to guide the defendant in designing the computer system to the plaintiff's exact specifications. Although the computer systems were being designed to be used eventually by the plaintiff with its customers, there is no allegation that any information actually CT Page 4752 flowed to a third party or was used by the plaintiff in dealing with a third party.
Taking all of the allegations stated in the complaint as true; Waters v. Autuori, supra, 236 Conn. 825; only demonstrates that the defendant is in the business of creating and supplying information organizing products, not supplying information itself. Therefore, the defendant's motion to strike count three of the plaintiff's complaint is granted because the plaintiff has not properly alleged facts which would allow it to come within the exception for recovering economic losses on a claim of negligent misrepresentation.
Count Four: Fraud
The defendant moves to strike the fourth count of the plaintiff's complaint on the ground it does not state a legally sufficient cause of action in fraud in that the statements alleged in the fourth count of the plaintiff's complaint represent mere sales puffery and opinion. In the alternative, the defendant argues that the fourth count is devoid of a legally sufficient allegation of the element of scienter.
A claim of fraud requires the plaintiff to allege all of the following elements: "(1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." Lagenv. Balcor Co., 274 Ill. App.3d 11, 653 N.E.2d 968, 972 (1995).
Although the plaintiff has alleged numerous fraudulent statements made by the defendant, many of these are not legally sufficient. "It remains the law in Illinois that a promise to perform an act, even though made without a present intention to perform, is insufficient to constitute fraud." Baker, Bourgeois Associates v. Taylor, 84 Ill. App.3d 909, 410 N.E.2d 55, 59
(1980). "Matters of fact are to be distinguished from expressions of opinion, which cannot form the basis of an action of fraud."Marino v. United Bank, 137 Ill. App.3d 523, 484 N.E.2d 935, 937
(1985).
However, there still remain allegations of fraudulent statements sufficient to overcome the defendant's motion to strike.[3] Furthermore, the law states that the determination CT Page 4753 as to whether a statement is puffery is generally a question of fact; Redmac, Inc. v. Computerland of Peoria, supra, 489 N.E.2d 382; and "[t]he court must construe the facts in the complaint most favorably to the plaintiff" in a motion to strike. (Internal quotation marks omitted.) Waters v. Autuori, supra,236 Conn. 825. Therefore, in the context of a motion to strike, these statements are sufficient to satisfy the first element of a claim for fraud.
The defendant also takes issue with the scienter element of a claim for fraud. However, the plaintiff has alleged in its complaint that "Andersen's actions were committed knowingly, willfully, and in conscious disregard of the rights of UOP." This allegation is sufficient to overcome a motion to strike based upon the lack of the element of scienter.
The fourth count of the plaintiff's complaint sufficiently alleges all of the required elements of a claim of fraud. Therefore, the defendant's motion to strike this count of the plaintiff's complaint is denied.
 Count Five: Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1, et seq.)
The plaintiff, in the fifth count of its complaint, alleges a cause of action based upon a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1, et seq. "[I]t is unquestionable that so long as the alleged deception occurred in a course of conduct involving trade or commerce, facts satisfying a claim for common law fraud will necessarily satisfy a claim under the [Illinois Consumer Fraud and Deceptive Practices] Act." Siegal v. Levy Org. Dev. Co., 153 Ill.2d 534,607 N.E.2d 194, 198 (1992). The complaint alleges that the defendant's deceptive acts took place "[i]n the course of its business." This assertion, coupled with the finding that the fraud count of the complaint sufficiently alleges all of the required elements of a claim of fraud, demonstrates the legal sufficiency of this count of the complaint. Therefore, the motion to strike the fifth count of the plaintiff's complaint is denied.
 Count Six: Negligence Claim Seeking To Recover For Economic Loss Due To Negligence
In the sixth count of its complaint, UOP asserts a claim for negligence seeking to recover from Andersen for economic loss. CT Page 4754 Andersen moves to strike this count of the complaint based upon the economic loss doctrine. The economic loss doctrine holds that a plaintiff cannot recover for economic loss under a negligence theory. Moorman Mfg. Co. v. National Tank Co., 9 Ill.2d 69,435 N.E.2d 443, 452 (1982). There are, however, some exceptions to the application of the economic loss doctrine.
The plaintiff claims that the duties allegedly breached by the defendant qualify for the exception to the economic loss doctrine because they arose outside of the service contract. The defendant counters with the assertion that this exception to the economic loss doctrine does not include computer service professionals, such as itself.
The economic loss doctrine exists in Illinois to preserve the separation between tort law and contract law.[4] This doctrine is necessary in order to assure that the rules of warranty, not negligence, are applied to contractual liability. SeeCongregation of the Passion, Holy Cross Province v. Touche Ross Co., 159 Ill.2d 137, 636 N.E.2d 503, 512-13, cert. denied, ___ U.S. ___, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). Thus, the economic loss doctrine allows a manufacturer to avoid "being held liable for damages of an unknown and unlimited scope" and it also allows a purchaser to "allocate the risk of unsatisfactory performance by bargaining for a warranty." Id., 513. Without this doctrine to check the development of tort law, it would eventually grow to encompass contract law as well. Id., 513.
Exceptions have been carved out of the doctrine of economic loss for service contract cases in which the injured party could not have bargained for a warranty against the particular harm suffered. See Congregation of the Passion. Holy Cross Province v.Touche Ross Co., supra, 636 N.E.2d 514. "The economic loss doctrine applies to the service industry only where the duty of the party performing the service is defined by the contract between him and his client. . . . Where a duty arises outside of that contract, the doctrine does not prohibit recovery under a tort theory for the negligent breach thereof. . . ." (Citations omitted.) Kater v. Deitelbaum, 271 Ill. App.3d 750,648 N.E.2d 1137, 1139 (1995). The Illinois courts have applied this exception to service contracts with accountants,[5]
lawyers,[6] and insurance brokers[7]. This exception to the economic loss doctrine has not been applied to all service professionals, i.e. the exception has not been extended to architects.[8] The distinction between the previous three CT Page 4755 professions and the profession of architecture is based upon the fact that their "knowledge and expertise cannot be memorialized in contract terms, as it is expected independent of [their] contractual obligations." Id. The value of the services rendered by these professionals lies in the ideas behind the final product, not in the final product itself. Id.
The services of a computer consultant are more like those of an architect, rather than those of an accountant, lawyer, or insurance broker. The architect's client can specify the dimensions of the structure, the materials to be used, the colors, the textures, etc. Similarly, a computer consultant's client can specify what the end product should be able to do: what information it should process, what forms it should produce, how data should be manipulated, etc. Neither of these jobs involves an extracontractual duty which arises from traditional responsibilities these professionals owe to their clients. This is not to imply that their jobs can be performed with less skill. It simply means that their only duty is to competently perform the tasks they are contracted to complete. They do not owe any other duties to their clients beyond those expressed in their service contracts. Lawyers, accountants, and insurance brokers, on the other hand, are contracted regarding general matters, but must thereafter make their own decisions regarding many significant matters, and the final decision they make is not necessarily contingent on the contracts they execute with their clients. See Congregation of the Passion. Holy Cross Province v.Touche Ross Co., supra, 636 N.E.2d 515. They "may offer different levels of service . . . but within these levels of service, the client is not required or expected to be able to direct the conduct of the [professional] through contractual provisions." Id., 514-15.
UOP claims that the fact that the systems integration agreement "did not set forth the entirety of Andersen's duties and obligations to UOP" proves that Andersen assumed a duty of professional competence outside the duties defined in the contract. This misinterprets the exception to the economic loss doctrine.
Whether the service party's duties could be defined in a contract, not whether they actually were defined in the contract, is the determining factor in the exception to the economic loss doctrine. See Congregation of the Passion. Holy Cross Province v.Touche Ross Co., supra, 636 N.E.2d 514. The fact that the CT Page 4756 plaintiff mentions several examples of alleged warranties by the defendant about its abilities shows that these duties were capable of being covered by warranties which could have been incorporated into the service contract.
The sixth count of the plaintiff's claim, which asserts a cause of action for economic loss couched in a negligence claim, is barred by the economic loss doctrine. The defendant did not owe an extracontractual duty to the plaintiff and therefore does not qualify for the exception to the economic loss doctrine. The defendant's motion to strike the sixth count of the plaintiff's claim is therefore granted.
 Count Six: Gross Negligence Claim Seeking To Recover Punitive Damages
The plaintiff claims that "Andersen's negligent acts were committed knowingly, intentionally, or with a conscious disregard of the rights of UOP, [and therefore] UOP is entitled to recover punitive damages." The defendant seeks to strike this claim based upon its assertion that "there is no independent cause of action for gross negligence."
Illinois does not allow a separate claim for punitive damages to be asserted in a breach of contract case simply because the breach was committed willfully and wantonly. See Morrow v. L.A.Goldschmidt Associates, 112 Ill.2d 87, 492 N.E.2d 181, 184
(1986). This principle bars the plaintiff's claim for punitive damages in count six of the complaint. The defendant's motion to strike the claim for punitive damages in count six is granted.[9]
 Count Seven: Attorney's Fees
The plaintiff's claim for attorney's fees in count seven of its complaint states that "[b]ecause Andersen has failed to acknowledge and assume responsibility for the injuries it has caused UOP, and has failed to compensate UOP for the damages sustained" the plaintiff was forced to take legal action and incur attorney's fees. In response, the defendant, in its motion to strike, notes that Connecticut[10] subscribes to the `American rule' which disallows recovery of attorney's fees as damages in a lawsuit, absent a statutory or contractual exception. See Doe v. Heintz, 204 Conn. 17, 28, 526 A.2d 1318
(1987). The plaintiff defends its request for attorney's fees CT Page 4757 based upon the allegation in count five of a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1, et seq., and the claim for gross negligence seeking punitive damages in count six.
The plaintiff's reliance on the Illinois Consumer Fraud and Deceptive Practices Act does not support the seventh count of the complaint. A claim for attorney's fees based upon the Illinois Consumer Fraud and Deceptive Practices Act has already been made in count five. Therefore, it cannot be the basis of an entirely separate claim for attorney's fees.
A claim for attorney's fees cannot be based upon a claim for punitive damages because, in Connecticut, punitive damages include attorney's fees. Berry v. Loiseau, 223 Conn. 786, 825-27,614 A.2d 414 (1992). There is no independent cause of action for attorney's fees in Connecticut. Id. Therefore, the defendant's motion to strike count seven of the plaintiff's complaint is granted.
Entire Complaint
The defendant also moves to strike the entire complaint as to Andersen Consulting on the grounds "that entity does not exist by that name." The defendant claims that because the plaintiff has alleged that Andersen Consulting, LLP, is the successor in interest to Andersen Consulting, the general partnership, it cannot then assert a cause of action against both entities. The plaintiff argues that defendant is merely trying to absolve the liability of the general partners of Andersen Consulting by limiting the plaintiff's target to the limited liability company only.
This argument implicates the issue of misjoinder and the defendant is correct in contesting it through a motion to strike. See Practice Book § 100; see also Practice Book § 198. However, Andersen Consulting, LLP, has not stated that it has assumed all of the liabilities of Andersen Consulting, the general partnership. Furthermore, according to General Statutes § 52-112, a plaintiff need not name individual members in order to commence a civil action against a general partnership. Therefore, the motion to strike the entire complaint as to Andersen Consulting, the general partnership, is denied.
So Ordered. CT Page 4758
Dated at Stamford, Connecticut, this 24th day of April, 1977.
William B. Lewis, Judge