DIANE P. WOOD, Circuit Judge,
concurring in the judgment.
While I agree that the proper disposition of Cozzi Iron & Metal’s counterclaims against Great America Leasing Corporation and U.S. Office Equipment is to dismiss the common law fraud claim and to remand the statutory consumer fraud claim, I am concerned that the rationale the majority has employed does not draw as sharp a line as it should among several different Illinois doctrines. I therefore concur in the judgment.
First, with respect to the common law fraud claim, the majority correctly notes that Illinois requires a plaintiff to prove five elements: (1) defendant made a false statement of material fact, (2) defendant knew that the statement was false, (3) defendant made the statement intending to induce the plaintiff to act, (4) plaintiff relied on the truth of the statement, and (5) plaintiffs damages resulted from that reliance. See Connick v. Suzuki Motor Co., 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (Ill.1996). The majority concludes that even if Cozzi, our plaintiff for these purposes, literally relied on the truth of U.S. Office’s copy volume estimates, this cannot constitute reliance as a matter of law because the contract warned that no representations had been made. If we were writing on a clean slate, this position makes perfect sense. But we are not. The Illinois Appellate Court, in Ginsburg v. Bartlett, 262 Ill.App. 14 (1st Dist.1931), faced a remarkably similar situation. There, a seller' had represented to the plaintiff at the time she entered into a contract for the sale of land that a new railroad facility would be established nearby. The contract, however, expressly stated that the buyer “agree[d] that the vendor has not represented or promised that there will be a new line of transportation ... and that a new line of transportation is not part of the consideration of this contract.” 262 Ill.App. at 21. The majority has attempted to distinguish Ginsburg on the ground that the fraudulent misrepresentation there did not involve a substantive part of the contract, but I find that unpersuasive.
I cannot see a difference between inducing someone to enter a contract for a copier based on representations about copy volume and inducing someone to enter a contract for the purchase of land based on representations about the land’s proximity to a railroad. Both are statements designed to make the purchaser think that he or she is getting a great bargain — cheap copies, or land that is more desirable because it has access to cheap transportation. Neither is inherently more substantive than the other.
On the other hand, the central issue before the Ginsburg court was not whether the reliance element of a fraud claim *578 could not be proven as a matter of law. It was instead whether the evidence of the pre-contractual representations had to be excluded from the proceeding because of Illinois’s parol evidence rule. The court found that the parol evidence rule did not require exclusion of the evidence, because “parol evidence of fraudulent representations, not concerning a substantive part of the contract but made to induce a party to enter into the same, is admissible in evidence and has no tendency to vary the terms of provisions of the written contract.” Id. at 35 (emphasis in original). As Cozzi’s case comes to us, no one is arguing about parol evidence. The issue is reliance, and the district court followed the numerous cases in which this court and others have said that a party cannot reasonably rely on statements flatly contradicted by the express terms of a contract. Nonetheless, the holding in Ginsburg is, as Cozzi points out, inconsistent with that line of cases, as the following passage illustrates:
It is also contended that the false representations, if made, cannot be relied upon by plaintiff ... because of the clause in all contracts (that plaintiff agrees that the vendor has not represented or promised that there will be a new line of transportation to the properties) .... Under the evidence and the law we do not think there is any merit in that contention or argument. We believe it to be well settled law that a party guilty of fraud cannot, by way of estoppel against the party injured, rely upon provisions in a contract similar to those contained in the present contracts.
262 Ill.App. at 33-34. In essence, the court found that the fraud was complete by the time the pre-contractual false representations were made, and thus that the contractual provisions claiming the contrary could not shield the seller from a fraud lawsuit.
Even if this is what Ginsburg held, however, our analysis of the present case is not complete. Ginsburg is, after all, a seventy-year-old decision from the intermediate state appellate court. It is our duty under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to decide whether Ginsburg represents the current view of the Illinois Supreme Court. Even though that court has never expressly disapproved of the outcome in Ginsburg, there is ample reason to predict that the Illinois Supreme Court would today require justifiable reliance, and would find that a plaintiff did not justifiably rely if the written contract it signed clearly warned — before plaintiff signed it — that no promises were being made. So, for example, in Marino v. United Bank of Illinois, N.A., 137 Ill.App.3d 523, 92 Ill.Dec. 204, 484 N.E.2d 935 (Ill.1985), the Illinois Supreme Court held that a mere allegation of reliance is insufficient to sustain a claim for common law fraud; the reliance must be justified. Whether reliance is justified depends on “all of the facts within a plaintiffs actual knowledge as well as those which he could have discovered by the exercise of ordinary prudence.” Neptuno Treuhand-Und v. Arbor, 295 Ill.App.3d 567, 229 Ill.Dec. 823, 692 N.E.2d 812, 818 (Ill.App.Ct.1998). Some years before Marino, the Illinois Appellate Court also held that there was no fraud as a matter of law in a case where the plaintiff had relied on oral representations that were inconsistent with the terms of a loan agreement that the plaintiff had ample opportunity to read before signing. See Belleville National Bank v. Rose, 119 Ill.App.3d 56, 74 Ill.Dec. 779, 456 N.E.2d 281 (Ill.App.Ct.1983).
In short, rather than drawing a line that is at best difficult and at worst illusory between “substantive” misrepresentations and non-substantive ones, I would squarely *579 confront Ginsburg and hold that my best guess as a federal judge is that it no longer represents the law of Illinois. With Ginsburg out of the way, we are then free to apply the law of reliance as it now exists in the state and to conclude that Cozzi’s common law claim against Great America was properly dismissed.
Turning to the discussion of Cozzi’s claim under the Illinois Consumer Fraud and Deceptive Practices Act (CFA), 815 ILCS 505/1 et seq., I again cannot subscribe to the rationale the majority has adopted. Once again, we begin on common ground with the elements of a claim under the CFA: (1) a deceptive act or practice by the defendant (U.S.Office), (2) the defendant’s intent that the plaintiff (Cozzi) rely on that deception, (3) the deception occurred in trade or commerce, and (4) proximate causation. Here, the troublesome parts of the case concern materiality and reliance. The majority looks to the Illinois Supreme Court’s decision in Connick, stipra, for the authoritative word on the meaning of materiality. There, the court defined a material fact as one in which “a buyer would have acted differently knowing the information, or ... [one that] concern[s] the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.” 221 Ill.Dec. 389, 675' N.E.2d at 595. This is the kind of language courts use when they are describing an objective inquiry. So far, so good, but then the majority turns to this court’s opinion in L.R.J. Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52 (7th Cir.1995). Decided prior to Connick, Ryan treated materiality under Illinois law as a subjective inquiry. It held that a sophisticated business person who signed a stock agreement containing terms inconsistent with oral representations made prior to signing the agreement must not have considered the representations material and thus he could not state a claim under the CFA. Id. at 54.
Rather than recognize that the later Connick decision undermines the interpretation of Illinois law we used in Ryan (to the extent that Ryan relies on a subjective inquiry), the majority accepts Ryan’s subjective inquiry and attempts to distinguish Ryan on its facts. Given that we are debating matters of Illinois law, any earlier decision of this court has no binding force in any event on the Illinois Supreme Court, and thus we are under no imperative to reconcile Ryan and Connick. Furthermore, to the extent that reconciliation may be desirable, the majority’s distinctions are unpersuasive. Cozzi, it says, had no experience with the substance of this contract and was not represented by counsel. Ante at 8. This statement flatly contradicts the earlier observation in the section of the majority’s opinion discussing common law fraud that “Cozzi is a sophisticated business that has experience in entering into contracts.” Ante at 6. More importantly, after Connick there can be little doubt that, unlike reliance, materiality is assessed in Illinois under an objective test. Objectively, it is clear that a trier of fact could find that whether a buyer would be held responsible for a fixed number of copies per month no matter how many it generated is the type of information upon which a reasonable person would be expected to rely. As far as materiality is concerned, therefore, Cozzi is on solid ground.
With respect to reliance, Cozzi is helped by the fact that the CFA has modified the common law requirement that reliance must be demonstrated and that it must be shown to be reasonable or justifiable. The Illinois Supreme Court said in Connick that “[p]laintiffs reliance is not an element of statutory consumer fraud [under the CFA].” 221 Ill.Dec. 389, 675 N.E.2d at 593. *580 The district court’s holding to the contrary relied on Illinois appellate decisions that had concluded that a private plaintiff seeking damages under the CFA must demonstrate “reasonable or justifiable reliance” even if “actual reliance” was not required. Whatever the status of those decisions before Connick, I cannot imagine that the Illinois Supreme Court would find that they survived it. Connick itself was a private party action, and thus no distinction based on the posture of the case is possible. Last, Connick cites with approval the earlier decision in Harkala v. Wildwood Realty, Inc., 200 Ill.App.3d 447, 146 Ill.Dec. 232, 558 N.E.2d 195 (Ill.App.Ct.1990), where the court said: “The [CFA] is intended to provide broader consumer protection than the common law action of fraud; therefore, a plaintiff need not show actual reliance or diligence in ascertaining the accuracy of the misstatements.” Id. at 199 (internal citations omitted).
Particularly given the distinction Illinois has drawn between reliance in common law cases and reliance in statutory cases, it is important for us to keep these doctrinal lines straight. On the other hand, we should not be introducing an element of subjectivity into the materiality question that does not now exist in Illinois law, whatever the case may once have been. I have no doubt that this court has come to the correct result in this case, but I must respectfully concur in the judgment.